COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| F-STAR SOCORRO, L.P., | § | |
| | | No. 08-08-00050-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 346th Judicial District Court |
| | § | |
| EL PASO CENTRAL APPRAISAL | | of El Paso County, Texas |
| DISTRICT AND THOMSON, INC., | § | |
| | | (TC# 2006-1950) |
| Appellees. | § | |

**O P I N I O N**

F-Star Socorro, L.P. appeals from the trial court's order granting the El Paso Central

Appraisal District's plea to the jurisdiction.  Appellant's first issue challeneges the trial court's

failure to file findings of fact and conclusions of law.  In Issues Two through Four, Appellant

argues the trial court granted the plea to the jurisdiction in error because it was excused from

exhausting its administrative remedies prior to filing suit in this instance.  Issues Five and Six

address questions of contractual privity and collateral estoppel, which were raised as alternative

grounds for dismissal.  Affirmed.

F-Star Socorro, L.P. is a limited partnership operating in El Paso County.  In 1998,

F-Star acquired approximately 140 acres of agricultural land in El Paso County as part of a

commercial real estate development project.[1]  When F-Star purchased the land, it also negotiated

---

[1] A more detailed explanation of F-Star's real estate dealings in El Paso County can be found in this Court's prior opinions: *F-Star Socorro, L.P. v. City of El Paso*, 281 S.W.3d 103, 104-05 (Tex.App.--El Paso 2008, no pet.) and *Duncan v. F-Star Management, L.L.C.*, 281 S.W.3d 474, 476-78 (Tex.App.--El Paso 2008, pet. denied).

several tax abatement agreements with the local taxing authorities: the City of Socorro; the El Paso County Community College District; the Lower Valley Water District; El Paso County; the El Paso County Hospital District; and Socorro Independent School District. The abatement agreements each provide for a 50 percent tax abatement of the assessed value of the property for ten years, beginning the year after F-Star completed construction on the property. F-Star completed construction, and leased the property to Thomson, Inc. in June 1998.

The El Paso Central Appraisal District ("EPCAD") administers property taxes within El Paso County. *See* TEX. TAX CODE ANN. § 6.01 (Vernon 2008). F-Star filed this lawsuit against the appraisal district in April 2006, seeking a declaratory judgment that EPCAD had misapplied the abatement agreements in the annual property appraisals. F-Star presented its allegations as follows:

> 13. From inception, in violation of the Abatement Agreements and Texas law, EPCAD has incorrectly certified the appraised values of the improvements on the Eligible Real Property to the City. As a result, the City has annually prepared tax bills to F-Star, which incorrectly state the amounts of ad valorem taxes assessed against the improvements to the Eligible Real Property. Instead of abating the taxes assessed, the City's tax bills to date have uniformly reflected a 50% reduction in the appraised values of the improvements on the Eligible Real Property, which reduction is referred to on the tax bills as an 'exemption.'
>
> 14. As a result of the manner in which EPCAD has certified to the City the taxable value of the improvements to the Eligible Real Property leased by Thomson, the tax bills prepared by the City reflect amounts of assessed ad valorem taxes thereon which, in effect, give the full value of the Abatement Agreements to Thomson, rather than to F-Star, in violation of the lease and in an unconstitutional depravation and taking of F-Star's property without due process of law.

F-Star represented to the court that according to the lease agreement, Thomson was required to pay the full amount of ad valorem taxes assessed each year, absent the benefit of the

abatement agreements negotiated by F-Star. F-Star claimed this provision was intended to allow F-Star to "partially recoup its costs for developing [the property] and the investment which it made for the utilities and other infrastructure . . . ." Thomson filed a plea in intervention in this case on July 6, 2006, in which the lessee argued that F-Star's interpretation of the lease terms was in error, and that Thomson was entitled to the benefit of the abatements.[1]

EPCAD answered the F-Star's lawsuit with a general denial, several special exceptions, and a plea to the jurisdiction. In its plea, EPCAD argued in part that F-Star's failure to pursue and exhaust its administrative remedies provided in the Texas Property Tax Code prior to filing suit deprived the trial court of jurisdiction over the case. In its response to EPCAD's plea, F-Star asserted the Property Tax Code did not mandate administrative review of this particular type of tax dispute prior to filing suit. It argued that its case was not an appraisal contest, but that the entity was seeking relief from the, "application of an unwanted, unauthorized exemption of a portion" of the appraised value of the property, and therefore was not required to pursue an administrative decision prior to filing suit.

The trial court heard the parties' legal arguments on the plea during a hearing on October 24, 2007. On January 9, 2008, the court issued an order granting EPCAD's plea, and dismissing the case for lack of jurisdiction. F-Star raises six issues challenging the dismissal order and the trial court's failure to file findings of fact and conclusions of law.

In Issue One, F-Star contends the trial court's failure to file findings of fact and conclusions of law despite a timely request and reminder, constitutes reversible error. Texas

---

[1] Thomson eventually filed a separate lawsuit against F-Star in September 2002, due to additional lease disputes. *See Five Star International Holdings, Inc. v. Thomson, Inc.*, -- S.W.3d. --, No. 08-07-00143-CV (Tex.App.--El Paso 2009, pet. filed).

Rules of Civil Procedure 296 provides a party with the procedural requirements to request the trial court to produce written findings of fact and conclusions of law. TEX.R.CIV.P. 296. Rule 297 mandates that the court make such findings upon timely request and reminder should the findings become overdue. *See* TEX.R.CIV.P. 297. It is undisputed in this case that the trial court failed to respond to a timely request to do so. F-Star argues that it is entitled to a reversal of the dismissal order, and remand for trial on the merits, or in the alternative this Court must abate the appeal so the findings may be entered. Because the trial court's ruling on the jurisdictional issues before it did not include any fact findings, we disagree with F-Star's assertion.

A party is entitled to findings of fact and conclusions of law after a conventional trial on the merits to the court. *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997). A "trial" is a hearing in which the court hears and receives evidence. *Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 711 (Tex.App.--Houston [14th Dist.] 2007, pet. denied). When, as is the case with an order granting dismissal for lack of jurisdiction, a judgment is rendered as a matter of law, findings and conclusions, while not improper, have no purpose and should not be requested or considered on appeal. *See Pro-Line Corp.*, 938 S.W.2d at 443. This is especially true when a plea to the jurisdiction does not involve disputed facts. *Haddix v. Am. Zurich Ins. Co.*, 253 S.W.3d 339, 346 (Tex.App.--Eastland 2008, no pet.). Absent a fact question, a trial court's decision granting or denying a plea to the jurisdiction is a question of law, subject to *de novo* review. *See Haddix*, 253 S.W.3d at 346, *citing State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996). In such a review, the appellate court must exercise its own judgment to determine each issue, and so cannot consider findings and conclusions even if they are included in the record. *See Haddix*, 253 S.W.3d at 346. In addition, regardless of the trial court's

-4-

subjective basis for its decision, a party challenging a ruling on a plea must address all independent grounds, and demonstrate that none support the court's decision. *See Britton v. Tex. Dept. of Criminal Justice*, 95 S.W.3d 676, 681 (Tex.App.--Houston [1st Dist.] 2002, no pet.). As such, inclusion of findings and conclusions can have no effect on the appellate court's analysis.

In this case, the trial court heard only argument during the October 24 hearing. There was no evidence introduced by the parties, or referenced as determinative by the court, and F-Star does not identify any specific fact issues which were implicitly determined by the court in its dismissal order. While the parties expressed disagreement about the legal effect of the facts in this case, the facts related to EPCAD's jurisdictional arguments are undisputed. Consequently, there were no fact issues for the trial court to resolve prior to making its decision, and findings of fact and conclusions of law would have served no purpose. *See Pro-Line Corp.*, 938 S.W.2d at 443. Accordingly, the trial court did not commit reversible error by failing to file findings of fact and conclusions of law, and there is no need to abate the appeal so that such findings may be filed. Issue One is overruled.

Issues Two through Four challenge the trial court's ruling on the basis that F-Star's failure to exhaust administrative remedies prior to filing suit deprived the court of subject matter jurisdiction. A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *Bland Ind. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review the trial court's ruling *de novo*. *Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). The plaintiff bears the burden of pleading facts which affirmatively demonstrate the court's jurisdiction over the case. *Schecter v. Wildwood Dev., L.L.C.*, 214 S.W.3d 117, 120 (Tex.App.-- El Paso 2006, no pet.). As this is a case where the jurisdictional facts are uncontested, the scope

of our review is limited to the face of the pleadings. *Id*.

The Texas Tax Code provides administrative procedures for property owners to contest ad valorem taxes. *See* TEX.TAX CODE ANN. §§ 41.07-.71 (Vernon 2008); *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006)(per curiam). Appraisal review boards are vested with the authority to hear and determine protests filed by property owners. TEX.TAX CODE ANN. § 41.41. An administrative decision on a taxpayer's protest is final if the property owner does not appeal the decision to the district court within sixty days. TEX.TAX CODE ANN. § 42.21(a)(Vernon Supp. 2009). The administrative proceedings constitute the "exclusive" procedure to challenge ad valorem taxes, and most defenses are barred if not raised in the agency. *See* TEX.TAX CODE ANN. § 42.09. Thus, "a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes." *Rourk*, 194 S.W.3d at 502, *quoting Matagorda Cty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex. 2005).

F-Star does not dispute the fact that it did not seek administrative relief prior to filing suit in the district court. Instead, F-Star asserts a distinction exists between a tax "exemption," which it argues was erroneously applied to its property by EPCAD, and a tax "abatement," which the entity argues was what it intended to have applied to the property through the Abatement Agreements. F-Star contends it was not required to contest this "unwanted exemption" through the administrative process. In an alternative argument, F-Star argues for the application of several other exceptions to the exhaustion of remedies doctrine to excuse its failure to pursue a protest with the appraisal board.

F-Star's primary argument is premised on the recognition of a distinction between a tax

"exemption" and a tax "abatement." According to F-Star, a tax "exemption" occurs when the appraising entity, as opposed to the taxing entity, subtracts some percentage of a property's appraised value prior to that value being listed in the appraisal records. The effect of an "exemption," therefore is to relieve the property owner from the duty to pay taxes on that percentage of the property's value. An "abatement," according to F-Star refers solely to a post-appraisal reduction in the actual amount of taxes due, by the taxing entity itself. F-Star continues by arguing that despite its agreements with the relevant taxing entities to abate 50 percent of ad valorem taxes, the appraisal board imposed a 50 percent exemption. Following the imposition of the "unwanted exemption," the taxing authorities must further reduce the tax bill by applying the agreed abatements, thereby reducing the already reduced tax revenue by an additional 50 percent. F-Star concludes, "[t]he 50% exemption applied by [EPCAD] both takes the benefit of F-Star's abatements under the Abatement Agreements away from it, and deprives taxing authorities of substantial amounts of tax."

Even if we were to accept F-Star's argued distinction, the question remains whether F-Star was required to protest the "unwanted exemption" to the appraisal review board prior to filing suit. Again, F-Star concedes that generally when a property owner wishes to dispute a tax, it must file a protest with the appraisal review board. However, F-Star contends it was excused from an administrative protest because the "unwanted grant" of an exemption is not one of the types of decisions the Tax Code permits a taxpayer to present to the appraisal review board.

F-Star's argument refers to paragraph (a) of Texas Tax Code section 41.41, titled "Right of Protest." Paragraph (a) states:

(a)     a property owner is entitled to protest before the appraisal review board

the following actions:

(1)     determination of the appraised value of the owner's property or, in the case of land appraised as provided by Subchapter C, D, E, or H, Chapter 23, determination of its appraised or market value;

(2)     unequal appraisal of the owner's property;

(3)     inclusion of the owner's property on the appraisal records;

(4)     denial to the property owner in whole or in part of a partial exemption;

(5)     determination that the owner's land does not qualify for appraisal as provided by Subchapter C, D, E, or H, Chapter 23;

(6)     identification of the taxing units in which the owner's property is taxable in the case of the appraisal district's appraisal roll;

(7)     determination that the property owner is the owner of property;

(8)     a determination that a change in use of land appraised under Subchapter C, D, E, or H, Chapter 23, has occurred; or

(9)     any other action of the chief appraiser, appraisal district, or appraisal review board that applies to and adversely affects the property owner.

TEX.TAX CODE ANN. § 41.41(a).

In both its argument to the trial court, and in its brief to this Court, F-Star focuses on items one through eight in this list, and concludes it was not required to file an administrative protest because the appraisal review board was not vested with authority to consider this type of tax dispute. F-Star's argument omits subparagraph nine, which as EPCAD points out, establishes a catch-all category for claims not already addressed by the statute. *See* TEX.TAX CODE ANN. § 41.41(a)(9). As alleged in its pleadings, F-Star's complaint was based on an action by the El Paso Central Appraisal District, an apprisal district created by the authority of the State

of Texas; and that by imposing the "unwanted exemption," EPCAD adversely effected F-Star. Without addressing the applicability of the provisions one through eight, we conclude subparagraph nine applies, and vested the appraisal review board with authority to review F-Star's claim. Accordingly, F-Star was not excused from pursuing an administrative protest on this basis. F-Star's failure to exhaust its administrative remedies, as demonstrated from the face of its pleadings, deprived the trial court of jurisdiction to consider the case. *See Rourk*, 194 S.W.3d at 502. The trial court did not err by granting EPCAD's plea to the jurisdiction, and we overrule Issues Two, Three, and Four. Given our disposition of these issues there is no need to address Issues Five and Six, or F-Star's alternative arguments regarding exhaustion of remedies.

Having overruled Issues One through Four, we affirm the trial court's order dismissing the case for lack of jurisdiction.


May 28, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J. and Macias, Judge
Macias, Judge (Sitting by Assignment)