ANN CRAWFORD McCLURE, Chief Justice
This tax suit presents two rather straightforward questions. The first is whether a taxpayer who claims lack of notice from the taxing entity as a defense must pursue an available administrative remedy upon learning of the claimed tax liability. The second question is whether a taxpayer can avoid tax liabilities at trial based on affirmative defenses which were never raised in a defensive pleading. Under the facts of this case, we answer the first question "yes" (one must pursue administrative remedies) and the second question "no" (you can't rely on affirmative defenses you never pled). Accordingly, we reverse the judgment of the trial court and remand for a new trial.
FACTUAL SUMMARY
The City of El Paso filed suit on May 18, 2009, over property taxes allegedly owed on some twenty-six specifically identified tracts of land that were or had been owned by Mountain Vista Builders, Inc. The tax *619 liabilities were claimed for various years between 2006 and 2008. Mountain Vista answered the suit, filing a general denial. In the years that followed, the City filed various partial non-suits over some of the specific tracts, apparently as the parties resolved the tax liabilities for specific pieces of property.
By the time the case was eventually set for trial in April of 2015, the only remaining claims involved the 2006 taxes owed on three specific tracts of land.[1] Mountain Vista did not contest that it owned those parcels on January 1, 2006, which is the relevant date for assessing property taxes. TEX.TAX CODE ANN. § 32.07(a) (West 2015)(providing that generally property taxes are the personal obligation of the person who owns the property on January 1st of the year for which the tax is imposed). Instead, Mountain Vista presented testimony below that it was developing the properties by building homes, and in turn selling the developed tracts to interested buyers. For the time periods when Mountain Vista owned the properties, it forwarded any tax bill that it received to its accountant for payment. And as those home sales closed at the title company, any outstanding taxes due on the land should have been addressed before title passed to the new owners. According to Mountain Vista, the title company should have been alerted to any notice of a tax deficiency prior to closing. Mountain Vista's owner testified that he had no personal knowledge of what the title company had done with regard to identifying what taxes were due on the property at the time of closing. For the particular subdivision at issue, Mountain Vista built and sold some sixty homes and all the parcels were sold to the eventual buyers by 2010 or 2011.
Mountain Vista also presented evidence that its procedure of paying the taxes was hampered by the El Paso Central Appraisal District (CAD) which sent some tax notices to the wrong address. Mountain Vista had apparently changed its business address in 2009 and 2011. By 2013, Mountain Vista sent a certified letter to the CAD providing a correct address for all its tax notices. But even as late as 2015, some tax notices were delivered to the wrong address. Mountain Vista learned of the claimed delinquent tax bills on these properties from its bank around 2011. By that time, all the properties had been sold. The title company that closed the sales had gone out of business.
At the bench trial, the City objected to much of this evidence. The City contended below that any claim of lack of notice must be first be presented to the CAD, and failing that, Mountain Vista failed to exhaust its administrative remedies which denied the district court jurisdiction over that defense. Mountain Vista agreed that it never filed any formal protest with CAD. The City also contended that Mountain Vista's general denial would not support any of its apparent arguments which were in the nature of affirmative defenses and therefore must be specifically pled. The trial court overruled each of these objections and eventually entered a take nothing judgment against the City. The trial court made specific findings of fact and conclusions of law which support that judgment on somewhat intertwined grounds.
First, the trial court entered findings supporting Mountain Vista's contention *620 that the taxing authority was sending tax notices to the wrong address. Second, the court entered a number of findings supporting Mountain Vista's claim that when any developed property was sold, the title company would have obtained from the City an amount shown as due, and would have paid that amount from the closing funds. According to the findings, the CAD published the amount of any tax due. The title company which handled the closing on the property asked the City for any amounts of tax due. The City would have responded and the title company would have been paid any amounts claimed as due. Finding of Fact No. Nine specified that the City "allowed the closing on each and every parcel without indicating there was any other amount outstanding."[2] The trial court further found that no penalties and interest were due because the disputed taxes had been paid. The court expressly found any claim for additional amounts was "waived."
We view the findings of fact and conclusions of law as addressing four possible defenses which the trial court accepted: (1) the taxes were already paid; (2) the City failed to provide notice of the tax due (and thus cannot claim penalties and interest); (3) the City's conduct vis-à-vis the closing sale conducted by the title company waived its right to seek additional sums; or (4) the City's conduct vis-à-vis the closing process estopped it from claiming any additional taxes.
The City brings three issues for review. It first contends that any claim of lack of notice must have been raised to the CAD in an administrative proceeding, and because Mountain Vista failed to do so, the district court had no jurisdiction over that defense. Second, the City claims that any evidence or finding based on an unpled affirmative defense is improper. Finally, in Issue Three, it attacks the portion of the trial court's judgment taxing costs against the City. Mountain Vista has not favored us with a brief. We sustain all three points and reverse and remand for a new trial.
FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES
The Texas Tax Code provides detailed administrative procedures for a property owner to contest its property taxes. See TEX.TAX CODE ANN. §§ 41.01 -.71 (West 2015); Cameron Appraisal District v. Rourk, 194 S.W.3d 501, 502 (Tex. 2006). Appraisal review boards, such as the CAD, have exclusive jurisdiction over protests. Rourk , 194 S.W.3d at 502 ; TEX.TAX CODE ANN. § 42.09(a). This administrative review process is intended to "resolve the majority of tax protests at this level, thereby relieving the burden on the court system."
*621 Harris County Appraisal Dist. v. ETC Marketing, Ltd., 399 S.W.3d 364, 367 (Tex.App.-Houston [14th Dist.] 2013, pet. denied), quoting Webb County Appraisal District v. New Laredo Hotel, Inc., 792 S.W.2d 952, 954 (Tex. 1990).
The Texas Supreme Court has repeatedly held that "a taxpayer's failure to pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes." Rourk , 194 S.W.3d at 502 ; Matagorda County Appraisal Dist. v. Coastal Liquids Partners, L.P., 165 S.W.3d 329, 331 (Tex. 2005) ; Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist., 826 S.W.2d 124, 125 (Tex. 1992) (per curiam); Webb County Appraisal Dist., 792 S.W.2d at 954-55. The Tax Code itself provides that unless the ground was raised administratively, affirmative defenses (other than some exceptional defenses not germane here) cannot be raised in a suit to collect delinquent taxes. TEX.TAX CODE ANN. § 42.09. We recently applied this jurisdictional bar against a taxpayer who did not timely appeal an adverse administrative determination of a tax protest, and later attempted to raise the same issue as a counterclaim and defense in a tax delinquency suit. Rio Valley, LLC v. City of El Paso , 441 S.W.3d 482, 487-88 (Tex.App.-El Paso 2014, no pet.). Similar to the claim here, the basis of the counterclaim and defense in Rio Valley was a claimed failure by the taxing authority to provide notice of tax bills, notice of delinquency, or notice of appraised property values. Id. at 485 ; see also F-Star Socorro, L.P. v. El Paso Cent. Appraisal Dist. , 324 S.W.3d 172, 176 (Tex.App.-El Paso 2010, no pet.) (exhaustion doctrine required issue of whether tax "exemption" or tax "abatement" must have first been resolved by CAD before it could be decided by district court).
Here, the City's first issue similarly contends the trial court lacked jurisdiction to consider any defense based on a failure to send notice of the tax due because it could have been raised and resolved by the CAD. Whether a trial court has subject matter jurisdiction, including the issue of exhaustion of administrative remedies, is a question of law. Stinson v. Insurance Company of the State of Pennsylvania, 286 S.W.3d 77, 83 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) ; see Texas Department of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004). Consequently, we review this challenge to the trial court's subject matter jurisdiction de novo. See Miranda, 133 S.W.3d at 226 ; Subaru of America, Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221-22 (Tex. 2002) ; Harris County Appraisal Dist., 399 S.W.3d at 367-72 (reviewing de novo whether property owner exhausted its administrative remedies under the Tax Code).
The Tax Code requires the tax assessor for each taxing unit to prepare and mail a tax bill to the responsible party for each property listed on the tax roll by October 1st or as soon thereafter as practicable. TEX.TAX CODE ANN. § 31.01(a). If the tax is unpaid and becomes delinquent, the "collector for a taxing unit shall deliver a notice of delinquency to each person whose name appears on the current delinquent tax roll." Id. at § 33.04(a). The notice is important as delinquency carries with it additional costs, such as penalties and interest, which the City attempts to collect here. Id. at § 33.01. And failure to give proper notice may be a defense to at least the penalties and interests that apply to unpaid taxes. Section 33.011 of the tax code provides that the governing body for a taxing unit "shall waive penalties and may provide for the waiver of interest on a delinquent tax" if some act or omission of the taxing unit (or its employees or agents) was to blame for the tax delinquency.
*622 Id. at § 33.011(a)(1). To invoke this provision, the underlying tax must be paid not later than the 21st day after the date the taxpayer knows or should know of the delinquency. Id. Mountain Vista expressly argued below that the lack of notice prevented the assessment of interests and penalties being sought.
But this seems precisely the sort of question the CAD should have first addressed. It had the exclusive jurisdiction to first decide if an employee or agent committed an act or omission covered by Section 33.011. The CAD could have engaged in the rather complicated process of untangling the date when particular payments on the subject lots were made (or not made). It had access to the various notices that it would have sent out on these properties along with the addresses used, none of which were made a part of the appellate record in this case.
When the City objected that lack of notice must first be decided by the CAD, the trial court raised the paradox of how a party can challenge the lack of notice if they never received the notice in time to raise the issue. Before 2007, that paradox was in play because a party's timetable for raising a challenge to the tax might have expired by the time they learned about the tax. See Indus. Commun., Inc. v. Ward County Appraisal Dist. , 296 S.W.3d 707, 714 (Tex.App.-El Paso 2009, pet. denied) (noting gap in previous version of statute permitting such a result). But that paradox has now been legislatively resolved.
A property owner is entitled to protest the failure of the chief appraiser or the appraisal review board to provide or deliver any notice to which the property owner is entitled. TEX.TAX CODE ANN. § 41.411(a).[3] If the property owner establishes that notice was not provided or delivered, the appraisal review board must determine a protest made by the property owner on any grounds of protest authorized by Title 1 of the Tax Code relating to the property to which the notice applies. Id. at § 41.411(b). Further, the delinquency date for purposes of Section 42.08(b) is postponed to the 125th day after the date that one or more taxing units first delivered written notice of the taxes due on the property as determined by the appraisal review board at a hearing under Section 41.44(c-3). Id. at § 41.411(c).
A protest claiming lack of notice under Section 41.411 should be brought before the date the taxes on the property become delinquent. Id. at § 41.44(c). But the statute also allows for later challenges:
Notwithstanding Subsection (c), a property owner who files a protest under Section 41.411 on or after the date the taxes on the property to which the notice applies become delinquent, but not later than the 125th day after the property owner, in the protest filed, claims to have first received written notice of the taxes in question, is entitled to a hearing solely on the issue of whether one or *623 more taxing units timely delivered a tax bill. If at the hearing the appraisal review board determines that all of the taxing units failed to timely deliver a tax bill, the board shall determine the date on which at least one taxing unit first delivered written notice of the taxes in question, and for the purposes of this section the delinquency date is postponed to the 125th day after that date.
Id. at § 41.44(c-3). The Legislature added Section 41.44(c-3) in 2007 and it applies to any tax protest filed on or after January 1, 2008. Acts 2007, 80th Leg., R.S., ch. 1106 § 4(c), 2007 TEX.GEN.LAWS 3739 ("The change in law made by this section applies only to an ad valorem tax protest filed on or after the effective date of this Act. An ad valorem tax protest filed before the effective date of this Act is governed by the law in effect at the time the protest was filed, and the former law is continued in effect for that purpose."). Mountain Vista's representative testified he learned of these outstanding taxes sometime in 2011, although perhaps the suit filed in 2009 might also have provided notice. Whichever date is correct, a protest could have been filed within 125 days and fallen under the purview of Section 41.44(c-3). See Rio Valley , 441 S.W.3d at 488-89 (similarly holding that notice given after effective date of Section 41.44(c-3) would trigger application of that provision).
Given that an avenue for challenging notice was available to Mountain Vista, we conclude any defense built on lack of notice should have been raised with the CAD at least within 125 days from when Mountain Vista learned of these particular tax delinquencies. The failure to do so deprived the district court of jurisdiction of a defense premised on that lack of notice. TEX.TAX CODE ANN. § 42.09(a) ; Rio Valley , 441 S.W.3d at 488-89 ; Ward County Appraisal Dist. , 296 S.W.3d at 715 (collecting cases applying exhaustion doctrine in ad valorem tax cases). Accordingly, we sustain Issue One.
PLEADING REQUIREMENTS FOR AFFIRMATIVE DEFENSES
In Issue Two, the City complains of the admission of evidence and any findings supporting affirmative defenses that were never pled. Mountain Vista proceeded to trial on a general denial. A defendant is required to plead affirmative defenses including waiver, estoppel, and "any other matter constituting an avoidance or affirmative defense." TEX.R.CIV.P. 94. Payment is also an affirmative defense that must be pled. F-Star Socorro, L.P. v. City of El Paso , 281 S.W.3d 103, 107-08 (Tex.App.-El Paso 2008, no pet.). A payment defense further requires the defendant to "file with his plea an account stating distinctly the nature of such payment," and failing that, the defendant "shall not be allowed to prove the same, unless it be so plainly and particularly described in the plea as to give the plaintiff full notice of the character thereof." TEX.R.CIV.P. 95. Any affirmative defense not raised in a responsive pleading is waived. First Nat'l Bank in Dallas v. Zimmerman, 442 S.W.2d 674, 675-76 (Tex. 1969).
It is clear that Mountain Vista was arguing several possible affirmative defenses below, none of which was affirmatively pled. The trial court's findings explicitly stated that the disputed tax bills were paid, but nothing in Mountain Vista's answer stated "distinctly the nature" of those payments, nor did the answer "plainly and particularly" describe the payments so as to give the City notice of the defense. The contention that the City sat idly by while the properties were being closed and the title company was asking for final tax bills suggests either a waiver or estoppel defense. See *624 Ghashim v. State , 104 S.W.3d 184, 188 (Tex.App.-Austin 2003, no pet.) (setting forth elements of estoppel claim necessary to avoid tax liability); Fed. Deposit Ins. Corp. v. Attayi , 745 S.W.2d 939, 946-47 (Tex.App.-Houston [1st Dist.] 1988, no writ) (stating generally the elements of waiver).
The City objected to any non-pled defense, and it submitted a letter brief specifically raising the issue with the trial court. The City also objected as some of the evidence was admitted. Accordingly, we sustain Issue Two. F-Star Socorro , 281 S.W.3d at 107-08 (finding waiver of payment and off-set defenses in tax delinquency suit where the defenses were not pled). Having sustained the first two issues, we reverse and remand to the trial court.
TAXING COURT COSTS AGAINST THE CITY
The final judgment also taxes court costs against the City. In Issue Three, the City complains that TEX.TAX CODE ANN. § 33.49 expressly prohibits that taxation of costs. Id. at § 33.49(a) ("... a taxing unit is not liable in a suit to collect taxes for court costs, including any fees for service of process or electronic filing, an attorney ad litem, arbitration, or mediation, and may not be required to post security for costs."); see also City of Wichita Falls v. ITT Com. Fin. Corp. , 835 S.W.2d 65, 66 (Tex. 1992) ; Leander Indep. Sch. Dist. v. Texas Conference Ass'n of Seventh-Day Adventists, 679 S.W.2d 487 (Tex. 1984) (per curiam).
This specific objection was not raised with the trial court below. We need not address whether the issue is waived, however, because we have reversed the judgment based on our resolution of Issues One and Two, which necessarily negates the taxation of costs. For that reason, we sustain Issue Three. To the extent this issue arises in this case in the future, we trust the trial court will follow the mandate of Section 33.49(a) and the Texas Supreme Court opinions which have applied it.
Hughes, J., not participating

The tracts were identified in certified delinquent tax statements as property Account No. U819-999-011F-0017 (1.3388 acres); No. U819-999-011L-0013 (22.6305 acres); and No. U819-999-011E-0041 (0.7990 acres). The total amount of taxes, penalty and interest claimed as of the date of trial was $29,180.76 for all the taxing entities-the amount owed the City was $6,379.37.

The relevant findings of fact include:
5. Amounts that were due and owing for taxes for each property that was closing were published with the Central Appraisal District with the taxing authority of the City of El Paso.
6. Notice was sent to the City of El Paso for an amount of the taxes that were owing on each property by the Title Company, prior to the closing.
7. Plaintiff sent notice on each parcel of the amount due and owing for the taxes on each parcel of land per the request of the title company. The amount due and owing was properly paid out of the closing on all parcels.
8. Plaintiff received said sums and were paid [sic] for all amounts that were owed under the property, as requested.
9. Plaintiff allowed the closing on each and every parcel without indicating there was any other amount outstanding.
The City has not challenged the legal or factual sufficiency of the evidence to support any of the findings of facts and we express no opinion as to whether any of these findings are actually supported by the record before us.

That section provides:
(a) A property owner is entitled to protest before the appraisal review board the failure of the chief appraiser or the appraisal review board to provide or deliver any notice to which the property owner is entitled.
(b) If failure to provide or deliver the notice is established, the appraisal review board shall determine a protest made by the property owner on any other grounds of protest authorized by this title relating to the property to which the notice applies.
(c) A property owner who protests as provided by this section must comply with the payment requirements of Section 41.4115 or the property owner forfeits the property owner's right to a final determination of the protest.
Tex.Tax Code Ann. § 41.411.