

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOHN GILBERT and MARISSA GILBERT, Co-Personal Representatives of the Estate of JOAN RAABE-ASPREY, | § | No. 08-22-00092-CV |
| | § | Appeal from the |
| Appellants, | § | County Court at Law No. 3 |
| v. | § | El Paso County, Texas |
| MANNIE KALMAN, | § | (TC# 2016DCV3628) |
| Appellee. | § | |

**MEMORANDUM OPINION**

Appellants John and Marissa Gilbert (the Gilberts) are personal representatives of Joan Raabe-Asprey's estate (the Estate). Appellee Mannie Kalman was a long-term friend and legal advisor of Raabe-Asprey. This case returns to us on appeal from the trial court's final $10,350 judgment in favor of Kalman following our remand to the trial court of Kalman's counterclaim against the Gilberts on unpaid attorney fees for legal services provided to Raabe-Asprey.[1] The Gilberts raise two issues on appeal, arguing that the trial court erred (1) by failing to offset Kalman's recovery by the interest on a promissory note he had executed in favor of Raabe-

---

[1] As further described below, we reversed the grant of Kalman's motion for partial summary judgment on his counterclaim and remanded the same to the trial court in *Gilbert v. Kalman*, 650 S.W.3d 135 (Tex. App.—El Paso 2021, no pet.).

Asprey and (2) by excluding evidence of ten sums Raabe-Asprey had paid to Kalman during her lifetime. For the reasons set forth below, we reverse the trial court's judgment and render a take-nothing judgment against Kalman.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In late September 2016, the Gilberts filed a lawsuit against Kalman on behalf of the Estate to recover on a $50,000 promissory note bearing an eight percent annual interest rate on unpaid principal and on matured, unpaid amounts, with principal and interest payable on demand, that Kalman had executed in favor of Raabe-Asprey on October 4, 2006.[2] Kalman counterclaimed for $60,350 in unpaid legal fees from having represented Raabe-Asprey after executing the promissory note. The Gilberts filed an answer to Kalman's counterclaim listing in single words the affirmative defenses of payment and offset.

In late January 2019, Kalman served the Gilberts with a request for admissions, which included admissions pertaining to legal services provided by Kalman to Raabe-Asprey and the admission that "[t]here remains due and owing to Kalman the sum of $60,350.00 for legal services provided to [Raabe-]Asprey." The Gilberts did not respond to Kalman's requests for admissions. Instead, they filed a plea in abatement and motion for protective order, which included discovery objections.[3] The trial court denied the Gilberts' plea in abatement and motion for protective order and issued an agreed discovery control plan and scheduling order,

---

[2] Prior to this lawsuit, John Gilbert had filed an action against Kalman in the Third Judicial District Court in New Mexico. In late September, that court granted Kalman's motion to dismiss on personal jurisdiction grounds. While John Gilbert appealed the New Mexico court ruling, the Gilberts also initiated the present suit to preserve its rights to litigate in Texas, as the statute of limitations would have otherwise run.

[3] The Gilberts filed this motion within 30 days of Kalman's request for admissions and days after the New Mexico district court "entered a Stipulated Order Denying . . . Kalman's Motion to Dismiss for Lack of Personal Jurisdiction" following discrepancies in Kalman's affidavits and deposition testimony in that case. And the Gilberts continued to maintain "the general common law rule in Texas is that the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other coordinate courts." For that reason, the Gilberts objected to Kalman serving discovery in the present suit.

establishing a new discovery deadline of September 27, 2019. The Gilberts never responded to the request for admissions Kalman had served them with in January, nor did they move to withdraw the admissions.

### A. Motions for partial summary judgment

Kalman filed motions for partial summary judgment on the Gilberts' claim and on his counterclaim. In his motion for partial summary judgment on the Gilberts' claim, Kalman included an affidavit from Daniel John Manuchia, who held Raabe-Asprey's power of attorney before her death. While acting as her power of attorney, Manuchia ascertained that Kalman did not owe Raabe-Asprey any money. "At a meeting between [Raabe-]Asprey, Manuchia, and Kalman, [Manuchia] asked Kalman directly if Kalman owed [Raabe-]Asprey any money. While Kalman declined to answer, [Raabe-]Asprey said, 'we are good, we are even.'" *Gilbert v. Kalman*, 650 S.W.3d 135, 139 (Tex. App.—El Paso 2021, no pet.). Manuchia recounted that Raabe-Asprey further stated "Mannie and I are even . . . he's helped me an awful lot."

The Gilberts proffered the promissory note for $50,000 described above. Along with his motions, Kalman filed his own affidavit claiming he received the $50,000 from Raabe-Asprey for his "ongoing and future legal services." *Gilbert*, 650 S.W.3d at 145. And Kalman produced an accounting of $60,350 in legal services he provided to Raabe-Asprey after executing the promissory note. Kalman swore: "The legal services I provided were provided in part, to satisfy any obligation I would have had under the Note." *Id.* at 146. At the same time, Kalman argued in his summary judgment motion "that the parties never intended that the Note be repaid. He sought summary judgment because there was no meeting of the minds that the Note would be a valid obligation and it was not executed or delivered with the intent to be mutual and binding."

3

*Id.* at 147. The trial court granted Kalman's motions, awarding him $60,350 in actual damages and issuing a take-nothing judgment against the Gilberts.

### B. The first appeal

The Gilberts appealed the trial court's judgment. *Gilbert*, 650 S.W.3d at 142. In that first appeal, we acknowledged, "There is no dispute that Kalman executed the Note in favor of [Raabe-]Asprey on October 4, 2006." *Id.* at 146. And we further acknowledged that "[t]he record . . . fails to establish that the proposed additional term (that the parties never intended the Note to be repaid) has been established as a matter of law." *Id.* at 147. Although Kalman failed to negate at least one element of the promissory-note claim, we affirmed a partial summary judgment in Kalman's favor and issued a take-nothing judgment against the Gilberts on the Gilberts' claim because Kalman conclusively proved his affirmative defense that he had fully paid the note by providing $60,350 in legal services to Raabe-Asprey from February 26, 2007 through August 6, 2015. *Id.* at 147-49 "The Gilberts offered no testimony to the contrary and never argued below or on appeal that the amount of claimed attorney's fees do not exceed the amount of the Note." *Id.* at 148. We recognized "the claim of payment is supported by statements made by [Raabe-] Asprey herself" when Manuchia investigated the debt. *Id*. at 148.

As to Kalman's motion for partial summary judgment on his counterclaim for unpaid attorney's fees, we sustained the Gilberts' argument because there remained a factual dispute as to the amount the Estate owed on the counterclaim. *Id*. at 145-46. In Kalman's affidavit attached to his motion for partial summary judgment on the Gilberts' claim, which we considered as part of the response to the counterclaim, Kalman averred that he received the $50,000 associated with the promissory note for his "ongoing and future legal services" on behalf of Raabe-Asprey. *Gilbert*, 650 S.W.3d at 145. Thus, we determined that the inconsistency within Kalman's own

4

affidavit created, at a minimum, a genuine issue of material fact as to whether the Estate owed the full $60,350 or whether $50,000-worth of those legal services were provided to offset the promissory note. *Id.* at 145-46. We did not resolve the evidentiary issue of whether the admissions regarding Kalman's legal services and the amount owed therefor were deemed admitted because it was not germane to that appeal, as Kalman himself called into question the amount owed by the Estate for his legal services. *Id.* at 144-45.

Accordingly, we remanded the case to the trial court for further proceedings on Kalman's counterclaim. *Id*. at 143-46, 149.

### C. Bench trial on remand

On remand, the case proceeded to a bench trial. At trial, Kalman clarified that he only sought to recover $10,350 because he applied $50,000 from the promissory note to offset the amount owed, as the "Court of Appeals has said we have to give a credit of 50,000 for the principle [sic] amount of the note." As a preliminary matter, Kalman asked the trial court to take judicial notice of the deemed admissions, which he stated controlled the outcome. The Gilberts objected on the following grounds. First, "the Court of Appeals has already deemed that those admissions are irrelevant to what's before the [c]ourt today . . . because . . . even if they were considered deemed admitted, Mr. Kalman's own testimony created the issues of fact that we need to resolve today." And second, the Gilberts relied "upon the motion for protective order that was filed and then the fact that [they] did respond to the discovery within the time the [c]ourt gave [them] at our hearing during the case in chief." The trial court asked the Gilberts why they did not move to strike the admissions and then judicially acknowledged the admissions as deemed, explaining under Rule 198.3: "A matter admitted under this rule is conclusively

established as to the party making the admission unless the court permits the party to withdraw or amend the admission."

At trial, Kalman again presented evidence of the same $60,350 in his unpaid legal fees in the form of a billing invoice detailing services performed from February 26, 2007, to August 6, 2015. Kalman testified that the $50,000 promissory note was intended to be a document solely for Raabe-Asprey to produce to her bank as an account receivable and that the note's eight percent interest rate on unpaid principal was only "[t]o the extent that the promissory note was intended for [Kalman] to pay back[.]" Kalman further stated in his affidavit, of which the court took judicial notice, "[Raabe-]Asprey agreed to pay [Kalman] $50,000.00 for [his] ongoing and future legal services" and he and Raabe-Asprey agreed that "since the promissory note was not an actual obligation, the note would be payable on demand but that [Raabe-]Asprey would never make demand for payment. This was done solely for accounting purposes." Kalman attested to executing the Note on October 4, 2006, "[t]o this end."

John Gilbert testified that the $50,000 promissory note, executed in favor of Raabe-Asprey and executed by Kalman, carried an eight percent interest rate, which was reflected on the face of the note. Given Kalman's claim that his legal services served as repayment of the promissory note, John Gilbert proffered and the trial court admitted an amortization schedule of the $50,000 debt with eight percent interest and payments thereon based on Kalman's legal services as he provided them. John Gilbert acknowledged that the court already ruled that the Estate could not collect on the promissory note, but he asserted that the purpose of the demonstrative exhibit was "to show that there is equally not any grounds for Mr. Kalman to recover based on the application of the interest." Over Kalman's objections based on the Gilberts' insufficient pleadings in the answer to Kalman's counterclaim as well as the deemed

6

admissions and the Gilberts producing the chart for the first time at trial, the court admitted the amortization schedule, which noted a total of $16,877.43 in interest on the $50,000 promissory note and an outstanding balance of $6,527.43 at the end of the legal services billings.

The Gilberts also attempted to present evidence of other payments made by Raabe-Asprey to Kalman. On cross-examination, the Gilberts asked Kalman about payments Raabe-Asprey made to him. Kalman testified that two of the payments on April 14, 2006, in the amounts of $100,000 and $50,000, respectively, were for legal services he had performed for Raabe-Asprey and her husband prior to executing the promissory note. The trial court sustained Kalman's relevance objection to questions about a third payment Raabe-Asprey made to him in the amount of $40,000 in March 2006. On direct examination, Mr. Gilbert attempted to testify about these and other payments made by Raabe-Asprey to Kalman. The trial court sustained Kalman's relevance objections but allowed the Gilberts to make an offer of proof. In their offer of proof, the Gilberts presented ten payments made by Raabe-Asprey to Kalman from 2006 through 2008 in amounts ranging from $3,800 to $100,000 but did not offer testimony about the purpose of any of these payments.

The trial court awarded Kalman the $10,350 in actual damages he sought and again issued a take-nothing judgment against the Gilberts. This appeal followed.

## II. ISSUES ON APPEAL

The Gilberts raise two issues on appeal: (1) whether the trial court erred by not applying the interest on the promissory note to offset Kalman's award; and (2) whether the trial court erred in excluding evidence of other payments from Raabe-Asprey to Kalman. We address each issue in turn.

### III.  INTEREST ON PROMISSORY NOTE TO OFFSET KALMAN'S AWARD

In their first issue, the Gilberts argue that the trial court erred in failing to apply the interest associated with the promissory note to reduce the amount of Kalman's award on his counterclaim.

#### A.  Preliminary matters

Prior to addressing the Gilberts' first issue, we address three preliminary matters: law of the case, pleading sufficiency, and deemed admissions.

#### (1)  *Law of the case*

First, the law of the case guides the trial court in subsequent proceedings in the same case where the issues are substantially the same, requiring on remand that the trial court address issues with reference to both the higher court's opinion and the mandate itself, i.e., here, according to our opinion and the parameters of its remand mandate. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *Jefferson v. GEICO County Mut. Ins. Co*., No. 05-20-00067-CV, 2022 WL 3908547, at *2–3 (Tex. App.—Dallas Aug. 31, 2022, no pet.) (mem. op.). In our first opinion, we found in Kalman's favor on the Gilberts' promissory-note claim because Kalman conclusively proved his affirmative defense of payment through the provision of $60,350 in legal services and the Gilberts did not argue that the attorney's fees did not exceed the amount owed on the note. *Gilbert*, 650 S.W.3d at 147-49. We did not, however, hold that Kalman negated any element of the Gilberts' promissory claim. *Id.* Accordingly, the promissory note was not disproven and the Gilberts were not precluded from raising it in response to Kalman's counterclaim. And as the Gilberts point out, the central issue on remand was to determine whether the promissory note should offset the counterclaim based on Kalman raising the issue of fact as to what extent the unpaid legal services were offset by the note.

### (2) *Pleading sufficiency*

Next, we turn to Kalman's pleading sufficiency argument. He contends the Gilberts did not sufficiently plead payment and offset under Texas Rule of Civil Procedure 95 because their affirmative defenses to his counterclaim merely list "payment" and "offset" as a conclusory matter and failed to plead an account stating the nature of the payments or describing the payments in a manner giving proper notice to Kalman. We recognize that in general, when pleading payment as an affirmative defense, a party is to describe the payments particularly or file an account with the pleading indicating the nature of the payment, enough so to give the other party full notice of the payment's character. *See, e.g.*, *F-Star Socorro, L.P. v. City of El Paso*, 281 S.W.3d 103, 107-08 (Tex. App.—El Paso 2008, no pet.); *Rea v. Sunbelt Sav., FSB, Dallas, Tex.*, 822 S.W.2d 370, 372-73 (Tex. App.—Dallas 1991, no writ); TEX. R. CIV. P. 95 ("When a defendant shall desire to prove payment, he shall file with his plea an account stating distinctly the nature of such payment, and the several items thereof; failing to do so, he shall not be allowed to prove the same, unless it be so plainly and particularly described in the plea as to give the plaintiff full notice of the character thereof.").

The Supreme Court of Texas has recognized that the purpose of a related rule, Rule 94, is to "give the opposing party notice of the defensive issue to be tried," and that they must be "pleaded" such that they are "raised before trial." *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 136-37 (Tex. 2014); *see* TEX. R. CIV. P. 94 (listing affirmative defenses). In the cases where the court held that a party waived those defenses, the party failed to plead the affirmative defense or failed to file an accounting of payments as required by Rule 95. *See, e.g.*, *Washington v. Yellowfin Loan Serv. Corp.*, No. 02-21-00215-CV, 2022 WL 16646409, at *8-9 (Tex. App.—Fort Worth Nov. 3, 2022, no pet.) (mem. op.); *City of El Paso v. Mountain Vista*

9

*Builders, Inc.*, 557 S.W.3d 617, 623-24 (Tex. App.—El Paso 2017, no pet.). In this case, we agree that the Gilberts' skeletal pleading of its payment and offset affirmative defenses in response to Kalman's counterclaim did not give Kalman notice of what payments Raabe-Asprey made to Kalman would be considered payment for Kalman's legal services beyond the promissory note already at issue.

Here, although the Gilberts listed but did not describe their payment and offset defenses, Kalman had full notice that the Gilberts would be raising the affirmative defenses of payment and offset founded in the promissory note at trial. Not only did the Gilberts plead the promissory note in their original petition, attaching a copy of promissory note itself, but the promissory note offset was the central issue over which the counterclaim was remanded based on Kalman's own testimony that he received the $50,000 promissory note amount as payment for ongoing legal services. Thus, we conclude that the Gilberts did not waive the ability to assert the affirmative defenses of payment and offset as to the promissory note, but waived the ability to do so as to any other payments by Raabe-Asprey to Kalman.

### (3) *Deemed admissions*

As a final preliminary matter, Kalman argues the Gilberts' deemed admissions—to the effect of "[t]here remains due and owing to Kalman the sum of $60,350.00 for legal services provided to [Raabe-]Asprey," which Raabe-Asprey failed to pay and the Gilberts refused to pay—are dispositive of this case. The parties dispute whether the admissions were deemed based on both the protective order the Gilberts filed and this Court's previous opinion that a question of fact remained as to whether Kalman was owed $60,350 based on his own testimony. We did not reach that issue in our previous opinion, nor do we reach it here.

Even if we were to consider the admissions deemed, "a party may not then introduce testimony to controvert it." *See Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989) (citing *Shaw v. Nat'l County Mut. Fire Ins. Co.*, 723 S.W.2d 236, 238 (Tex. App.—Houston [1st Dist.] 1986, no writ). At trial, Kalman himself controverted the admissions when he testified that he was paid $50,000 connected to the promissory note prospectively for the legal services bills he previously alleged were unpaid. The Texas Supreme Court has held that "a party relying upon an opponent's pleadings as judicial admissions of fact must protect the record by objecting to the introduction of controverting evidence and to the submission of any issue bearing on the facts admitted," otherwise, they waive the ability to rely on the admissions. *Marshall*, 767 S.W.2d at 700 (citing *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983). In *Marshall*, Vise not only failed to object to the testimony that controverted Marshall's deemed admissions, but Vise "actually elicited much of the contradictory evidence," and was thus no longer able to rely on the admissions. *Id.* Here, by controverting the deemed admissions with his own testimony, Kalman waived his right to rely on the admissions to the effect of the Estate owing Kalman $60,350 for his legal fees. *Marshall*, 767 S.W.2d at 700.

## B. Standard of review and applicable law

Having addressed the preliminary issues, we turn to the standard of review and applicable law. Kalman asserts that the Gilberts are challenging the sufficiency of the evidence supporting the trial court's denial of their affirmative defenses. The Gilberts argue that we should apply a de novo standard of review on this issue as it pertains to a question of law: "the interpretation of an unambiguous contract." There is no dispute between the parties that the written $50,000 promissory note existed and that it is in the record. The Gilberts' first issue raises the question of

11

contract interpretation in so far as it argues the trial court erred by failing to apply the interest on the note to offset Kalman's counterclaim.

When interpreting contract language, we "give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). If the document's terms reflect a certain and definite legal meaning, the contract is not ambiguous. *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888–89 (Tex. 1998); *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996).

Kalman drafted the promissory note with clear terms and a date of October 4, 2006, the date he executed it in favor of Raabe-Asprey. The note carried an eight percent annual interest rate "on Unpaid Principal from Date" and "on Matured, Unpaid Amounts" and it specified that the principal and interest was payable upon demand. Neither party seems to argue the promissory note is ambiguous, and we agree. Therefore, we limit our analysis to interpreting the promissory note's plain language to determine the parties' obligations. *See Yzaguirre v. KCS Resources, Inc.*, 53 S.W.3d 368, 372–73 (Tex. 2001); *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 311–12 (Tex. 2005) (per curiam) (in construing a written contract, primary concern is ascertaining and giving effect to parties' intentions as expressed in the document).

Kalman testified that the $50,000 promissory note was intended to be a document solely for Raabe-Asprey to produce to her bank as an account receivable and that the note's eight percent interest rate on unpaid principal was only "[t]o the extent that the promissory note was intended for [Kalman] to pay back[.]" Kalman further stated in his affidavit, of which the court took judicial notice, "[Raabe-]Asprey agreed to pay me $50,000.00 for my ongoing and future legal services" and he testified that he and Raabe-Asprey agreed that "since the promissory note

12

was not an actual obligation, the note would be payable on demand but that [Raabe-]Asprey would never make demand for payment. This was done solely for accounting purposes." Kalman attested to executing the note on October 4, 2006, "[t]o this end." And Manuchia testified that according to Raabe-Asprey, she and Kalman were even and that Kalman did not owe her anything.

However, extrinsic evidence is only admissible where the contract language is ambiguous. *Friendswood Dev. Co.*, 926 S.W.2d at 283. Parol evidence of intent may not be admitted to create an ambiguity. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520-21 (Tex. 1995) (extrinsic evidence is inadmissible to contradict or vary the meaning of the explicit language of the parties' written agreement). Kalman's testimony that the parties intended for the note not to be an "actual obligation" directly contradicts the note's unambiguous language and therefore could not have been properly considered by the trial court to eliminate the interest-bearing terms. *See, e.g.*, *Hubacek v. Ennis State Bank*, 317 S.W.2d 30, 32 (Tex. 1958); *Friendswood Dev. Co.*, 926 S.W.2d at 283 ("Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract.") (referencing *National Union*, 907 S.W.2d at 521). The trial court could not have properly considered any testimony to ascertain the intent of the parties beyond what the promissory note clearly articulates.

We therefore proceed by interpreting the promissory note's terms de novo to determine whether the trial court erred in failing to account for the note's interest. *Farmers Group, Inc. v. Geter*, 620 S.W.3d 702, 709 (Tex. 2021); *K. Hovnanian Homes—DFW, LLC v. Powdermaker First Family Limited Partnership*, No. 02-15-00339-CV, 2016 WL 3198679 at *3 (Tex. App.—

13

Ft. Worth June 9, 2016, no pet.) (mem. op.) (applying "traditional rules of contract interpretation to determine, as a matter of law, whether the trial court erred in its construction of the contract").

### C. Analysis

The promissory note provides for eight percent interest on the unpaid principal from October 4, 2006, provides for payment of principal and interest on demand, and states "[e]ach Maker is responsible for all obligations represented by this note." Kalman is the sole Maker. The Gilberts argue that, because the trial court should have applied $16,877.43 in interest on the $50,000 promissory note to offset Kalman's award based on eight percent interest on the unpaid principal, the court should have issued a take-nothing judgment against Kalman. Kalman, on the other hand, argues that "the plain language of the Note precludes their argument" in that "the terms of payment for both principal and interest are '[u]pon demand.'" And "[i]t is undisputed that [Raabe-]Asprey never made demand on the Note during her lifetime. It is also undisputed that [Raabe-]Asprey repeatedly stated that Kalman did not owe her any money prior to her death. Thus, even if the Note were a valid obligation, it was paid in its entirety before demand for interest was made."

Kalman reduced the amount he sought on his counterclaim at trial from $60,350 to $10,350 to account for the principal on the promissory note he received from Raabe-Asprey for his "ongoing and future legal services." At trial, Kalman again presented evidence of the same $60,350 in his unpaid legal fees he relied on in his motion for partial summary judgment in the form of a billing invoice detailing services performed from February 26, 2007, to August 6, 2015. Over Kalman's objection, the trial court admitted the Gilberts' amortization schedule showing the $50,000 promissory note bearing eight percent interest on unpaid principal and Kalman's paying down the note according to his provision of legal services based on Kalman's

14

accounting. The payment schedule reflects a total of $16,877.43 in interest from the date the interest first began accruing through Kalman's last attorney fee bill.

Irrespective of whether Raabe-Asprey made a demand for the principal and interest, the principal was accruing interest on unpaid principal from the date of the note forward. Thus, we conclude that the trial court erred in interpreting the promissory note contrary to its unambiguous language and failing to offset Kalman's counterclaim by the amount of the interest on the note, which more than offset the full amount of Kalman's unpaid legal bills totaling $60,350.[4]

Accordingly, we sustain the Gilberts' first issue.

## IV. EXCLUSION OF EVIDENCE OF OTHER PAYMENTS

In their second issue, the Gilberts argue that the trial court erred by excluding evidence of the following payments from Raabe-Asprey to Kalman: (1) a $40,000 check dated March 14, 2006; (2) a duplicate check and account statement showing a $20,000 payment on April 10, 2006; (3) a duplicate check and account statement showing a $50,000 payment on April 19, 2006; (4) a duplicate check and account statement showing a $100,000 payment on April 20, 2006; (5) a Merrill Lynch tax reporting statement check summary showing a $50,000 payment on October 3, 2006; (6) a Merrill Lynch tax reporting statement check summary showing a $50,000 payment on January 10, 2007; (7) a Merrill Lynch tax reporting statement check summary showing a $7,500 payment on May 3, 2007; (8) a Merrill Lynch tax reporting statement check summary showing a $3,800 payment on July 23, 2007; (9) a Merrill Lynch tax reporting statement check summary showing a $6,000 payment on April 15, 2008; and (10) a Merrill Lynch tax reporting statement check summary showing a $35,000 payment on June 20, 2008.

---

[4] On August 6, 2015, the date of Kalman's last bill, he was $6,527.43 short on paying the note in full.

Kalman argues that these additional payments were not appropriately pleaded, were not connected to any debt or demand owed to Raabe-Asprey, and controverted the deemed admissions. As discussed above, we agree with Kalman that the Gilberts did not properly plead any of these payments as an affirmative defense to his counterclaim. Thus the trial court could not have abused its discretion in excluding evidence of these payments from Raabe-Asprey to Kalman. *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 161 (Tex. 2015) (trial court's evidentiary rulings reviewed under an abuse-of-discretion standard on appeal); *Hernandez v. Moss*, 538 S.W.3d 160, 167 (Tex. App.—El Paso 2017, no pet.) (trial court abuses its discretion only when it acts without reference to any guiding rules or principles).

Accordingly, we overrule the Gilberts' second issue.

## V. CONCLUSION

We reverse the trial court's judgment and render a take-nothing judgment against Kalman. We further reverse the trial court's award of attorney's fees to Kalman.[5]


LISA J. SOTO, Justice

May 31, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

---

[5] While Kalman argues he is entitled to attorney's fees for bringing a successful, albeit completely offset, contract claim under TEX. CIV. PRAC. REM. CODE ANN. 38.001(b)(8), the fact that the claim "was paid in full before trial" renders Kalman not entitled to his attorney's fees. *See, e.g.*, *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 806-08 (Tex. App.—Dallas 1988, no writ).