

# NUMBER 13-20-00261-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON SUBSCRIBING
TO POLICY NO. NAJL05000016-H87,
AS SUBROGEE OF MOMENTUM
HOSPITALITY, INC. & 75 AND
SUNNY HOSPITALITY
D/B/A FAIRFIELD INN & SUITES,                          Appellant,

v.

MAYSE & ASSOCIATES, INC.,                              Appellee.

## On appeal from the 343rd District Court
## of Aransas County, Texas.



# NUMBER 13-20-00377-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON SUBSCRIBING
TO POLICY NO. NAJL05000016-H87,
AS SUBROGEE OF MOMENTUM
HOSPITALITY, INC. & 75 AND
SUNNY HOSPITALITY
D/B/A FAIRFIELD INN & SUITES,                           Appellant,

v.

D'AMATO CONVERSANO, INC.
D/B/A DCI ENGINEERS,                                    Appellee.

On appeal from the 343rd District Court
of Aransas County, Texas.

# OPINION

Before Justices Benavides, Longoria, and Tijerina

# Opinion by Justice Longoria

This is a consolidated[1] interlocutory appeal from the trial court's granting of an engineer's and architect's motions to dismiss with prejudice under Chapter 150 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(f) (authorizing an immediate interlocutory appeal of an order granting a motion for dismissal under § 150.002). By two issues, which we construe as three, in appellate cause number 13-20-00377-CV, appellant Certain Underwriters at Lloyd's of London Subscribing to Policy No. NAJL05000016-H87, as Subrogee of Momentum Hospitality, Inc. & 75 and Sunny Hospitality d/b/a Fairfield Inn & Suites (Underwriters) argues that the trial court erred in granting appellee D'Amato Conversano, Inc. d/b/a DCI Engineers's (DCI) motion to dismiss because: (1) DCI, through its litigation conduct, waived its right to seek dismissal under § 150.002 of the Civil Practice and Remedies Code; and (2–3) Underwriters's engineer's expert affidavit (referred to as a certificate of merit) satisfies §§ 150.002(a)(2), (a)(3). *See id*. § 150.002. Similarly, but by only one issue, in appellate cause number 13-20-00261-CV, Underwriters argues that the trial court erred in granting appellee Mayse & Associates, Inc.'s (Mayse) motion to dismiss because Underwriters's architect's expert affidavit satisfies § 150.002(a)(3).[2] We affirm in part and reverse and

---

[1] On November 20, 2020, this Court granted appellant's Motion to Consolidate Appeals consolidating appellate cause no. 13-20-00377-CV, styled *Certain Underwriters at Lloyd's of London Subscribing to Policy No. NAJL05000016-H87, as Subrogee of Momentum Hospitality, Inc. & 75 and Sunny Hospitality d/b/a Fairfield Inn & Suites v. D'Amato Conversano, Inc. d/b/a DCI Engineers*, with appellate cause no. 13-20-00261-CV, styled *Certain Underwriters at Lloyd's of London Subscribing to Policy No. NAJL05000016-H87, as Subrogee of Momentum Hospitality, Inc. & 75 and Sunny Hospitality d/b/a Fairfield Inn & Suites v. Mayse & Associates, Inc.* These appeals both arise out of the trial court cause number A-19-0236-CV-C and will be resolved in this one opinion.

[2] Mayse also contends, in one sentence in its brief, that this Court lacks jurisdiction as stated in its motion to dismiss filed on September 2, 2020; however, this Court previously denied Mayse's motion to dismiss on November 20, 2020. Thus, this issue is moot.

remand in part.

## I.  BACKGROUND

On July 31, 2019, Underwriters, as subrogee, sued DCI (one of the engineers) and two other defendants not parties to this appeal, for alleged deficiencies in the design and construction of the Fairfield Inn & Suites hotel (Hotel), located in Rockport, Texas. In pertinent part, Underwriters attached to its original pleading the affidavit of Bradley F. Coffman, M.S., P.E., a licensed engineer. Underwriters also attached an agreement that discussed design and construction services, between Underwriters and Mayse, which Underwriters argues also applies to DCI. After the Hotel's construction, Hurricane Harvey made landfall in Rockport on or about August 25, 2017. Underwriters contended the Hotel sustained significant damage when a side wall "blew out." Additionally, Underwriters claimed that nearby properties were largely unaffected by the hurricane, and the damage suffered by the Hotel was significantly worse than what would be expected in the Rockport area under the circumstances. Underwriters, as insurer, alleges it paid the insured, Momentum Hospitality, Inc. & 75 and Sunny Hospitality d/b/a Fairfield Inn & Suites, more than $4 million for the damages sustained.

On August 23, 2019, Underwriters amended its pleading and added Mayse (the architect) as a party to the suit, alleging negligence and/or gross negligence, breach of contract, and breach of express and/or implied warranties. Underwriters supplemented its live pleading with the affidavit of Kenneth Itle, a licensed architect. Additionally, Underwriters included the same agreement between Underwriters and Mayse that discusses design and construction services which was included in its original pleading.

4

On August 27, 2019, DCI filed a general denial and various other defenses but did not raise an issue with Coffman's affidavit. Subsequently, DCI propounded requests for production and requests for disclosure on Underwriters. Later, DCI also sent a second request for production to Underwriters.

On September 30, 2019, Mayse challenged Itle's affidavit by filing a motion to dismiss based on a failure to comply with § 150.002(a)(3). *See id*. § 150.002(a)(3) ("In any action . . . for damages arising out of the provision of professional services by a licensed or registered professional, a claimant shall be required to file with the complaint an affidavit of a third-party licensed architect, licensed professional engineer . . . who: . . . practices in the area of practices of the defendant . . . ."). After briefing by both parties and a hearing, the trial court granted Mayse's motion and dismissed Underwriters's claims against Mayse with prejudice.

On June 12, 2020, DCI filed a motion to dismiss asking the trial court to strike Coffman's affidavit and dismiss Underwriters's suit with prejudice on § 150.002(a)(2) and § 150.002(a)(3) grounds. *See id.* § 150.002(a)(2) ("In any action . . . for damages arising out of the provision of professional services by a licensed or registered professional, a claimant shall be required to file with the complaint an affidavit of a third-party licensed architect, licensed professional engineer . . . who: . . . holds the same professional license or registration as the defendant . . . ."); *Id*. § 150.002(a)(3).

In addition to asserting that Coffman's affidavit was sufficient, Underwriters filed a response contending DCI waived its right to seek dismissal under § 150.002, which DCI denied. The trial court granted DCI's motion dismissing Underwriters's claims with prejudice. This appeal followed.

## II. NO WAIVER OF STATUTORY RIGHT TO SEEK DISMISSAL

In its first issue, Underwriters generally asserts that DCI's litigation conduct waived its right to seek dismissal.

### A. Standard of Review and Applicable Law

Section 150.002 of the Texas Civil Practice and Remedies Code requires that a sworn "certificate of merit" accompany any lawsuit complaining about a licensed professional engineer's and architect's services. *Id*. § 150.002. Subsection 150.002(e) contains the right to seek dismissal. *Id*. § 150.002; s*ee also LaLonde v. Gosnell*, 593 S.W.3d 212, 221 (Tex. 2019). Section 150.002 gives certain professionals, such as licensed engineers, the right to a professional certification that any complaint about their services has merit before any litigation may be undertaken at all. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002. Absent a properly filed certificate of merit, professionals have the right to avoid litigation entirely. *See LaLonde*, 593 S.W.3d at 220. Chapter 150 does not include a deadline for seeking dismissal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002. Nonetheless, the absence of a deadline for asserting a right does not preclude implied waiver by conduct inconsistent with claiming the right. *See LaLonde*, 593 S.W.3d at 221.

Waiver is a question of law. *Id*. at 220 (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008)). "Appellate courts do not defer to the trial court on questions of law." *Id*. We defer to a trial court's disposition of disputed facts, but when there are none, as here, our review is entirely de novo. *See id*. "Waiver is the 'intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right.'" *Id*. at 218–19 (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 391 (Tex. 2014)).

6

"Though waiver is a question of intent, it need not be explicit." *Id*. at 219. "A party's conduct sufficiently demonstrates intent to waive a right if, in light of the 'surrounding facts and circumstances,' it is 'unequivocally inconsistent with claiming' that right." *Id.* (quoting *Crosstex*, 430 S.W.3d at 393–94). "'[S]ubstantial invocation of the judicial process' implies waiver when it 'clearly demonstrat[es]' an intent to abandon a known right." *Id*. (quoting *Crosstex*, 430 S.W.3d at 394).

"[T]he universal test for implied waiver by litigation conduct is whether the party's conduct—action or inaction—clearly demonstrates the party's intent to relinquish, abandon, or waive the right at issue—whether the right originates in a contract . . . [or] statute." *Id*. at 219–20. "This is a high standard." *Id*. at 220. To determine whether a party's conduct clearly demonstrates an intent to waive a right, courts must consider the totality of the circumstances. *See id*. "This is a 'case-by-case' approach that necessitates consideration of all the facts and circumstances attending a particular case." *Id*.

We thus begin our implied-waiver analysis by reviewing DCI's litigation conduct to determine whether under the totality of circumstances its conduct was inconsistent with its rights under § 150.002. *See id.* at 221–23.

## B. DCI's Litigation Conduct Does Not Establish Implied Waiver

Underwriters contends that upon examining DCI's actions or inactions, there are three acts—or failures to act—that provide a compelling case of waiver. We address each in turn.

### 1. No Allegation of Defect in DCI's Original Answer

First, Underwriters argues that because DCI did not raise an alleged defect with Coffman's affidavit in its original answer, DCI waived its ability to seek dismissal of

7

Underwriters's claims pursuant to § 150.002, or at the very least, such conduct should be considered a significant factor towards finding waiver. DCI responds that there is not a statute or Texas case that requires an answer to contain or mention defects in a certificate of merit, that § 150.002 does not impose such a requirement, that there is no statute or case law supporting Underwriters' assertion, that DCI's general denial put all matters at issue, and that filing an answer is inconsequential to the waiver analysis.

To determine whether DCI's failure to allege a deficiency with Coffman's affidavit in its original answer demonstrates waiver of its right to seek dismissal, we first determine whether § 150.002 is an affirmative defense. Underwriters cites no authority that expressly classifies § 150.002 as an affirmative defense, and we have found none. Rather, to support its waiver contention, Underwriters asserts that a § 150.002 defense can be waived, so by definition it is a non-jurisdictional defense with reliance on *Crosstex* and *Frazier*. *Crosstex,* 430 S.W.3d at 393*; Frazier v. GNRC Realty, LLC,* 476 S.W.3d 70, 73 (Tex. App.—Corpus Christi–Edinburg 2014, pet. denied). However, nowhere in *Crosstex* or *Frazier* does either court expressly classify § 150.002 as a non-jurisdictional defense or even recognize it as a defense. Rather, the supreme court in *Crosstex*, which is followed by *Frazier*, "[h]old[s] that [§] 150.002 imposes a mandatory, but not jurisdictional, filing *requirement* . . . [and t]hus . . . hold[s] that a defendant may waive its *right* to seek dismissal under the statute." *Crosstex*, 430 S.W.3d at 393 (emphasis added); *Frazier*, 476 S.W.3d at 73.

Underwriters also directs us to *Earth Power A/C and Heat, Inc. v. Page*, 604 S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2020, no pet.), *Texas Dep't of Health v. Rocha*, 102 S.W.3d 348, 353 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.), and

8

*City of El Paso v. Mountain Vista Builders, Inc.,* 557 S.W.3d 617, 623 (Tex. App.—El Paso 2017, no pet.) in support of its contention that any non-jurisdictional defense not raised in an answer is considered waived, and DCI's failure to assert a § 150.002 defense in its answer is compelling evidence of waiver of that defense. In *Page*, an HVAC contract dispute, *City of El Paso*, a tax-delinquency dispute, and *Rocha*, a wrongful-termination dispute, the courts, including our own in *Rocha*, either identify a particular affirmative defense, state the general proposition that an affirmative defense is waived if not pleaded, or do both; however, none of those cases expressly classify § 152.002 as an affirmative defense, and we do not interpret them to do so by implication or extension. *See Page*, 604 S.W.3d at 524 ("A contracting party's assertion that it is excused from further performance because of the other party's material breach is an affirmative defense that must be pleaded and proved."); *City of El Paso*, 557 S.W.3d at 623 ("Any affirmative defense not raised in a responsive pleading is waived."); *Rocha*, 102 S.W.3d at 353 ("Immunity from liability is an affirmative defense that is waived if not pleaded.").

Underwriters additionally cites to Texas Rule of Civil Procedure 94 in support of its affirmative defense argument. *See* TEX. R. CIV. P. 94. "The Texas Rules of Civil Procedure require that specific defenses and any matter 'constituting an avoidance or affirmative defense' 'shall [be] set forth affirmatively' in a responsive pleading." *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155 (Tex. 2015) (quoting TEX. R. CIV. P. 94). Though Rule 94 includes a laundry list of affirmative defenses, a defect in a certificate of merit under § 150.002 is not among them. *See* TEX. R. CIV. P. 94. We must therefore determine whether an alleged defect under § 150.002 falls within Rule 94's residual clause, which extends to "any other matter constituting . . . affirmative defense." *Zorrilla*, 469 S.W.3d at

9

155. "The scope of a procedural rule is a question of law, which we review de novo by applying the same canons of construction applicable to statutes." *Id*. An affirmative defense places the burden of proof on the defendant to present sufficient evidence to establish the defense. *Id*. at 156.

Section 150.002 provides as follows:

(a)     In any action . . . for damages arising out of the provision of professional services by a licensed or registered professional, a claimant shall be required to file with the complaint an affidavit of a third-party licensed architect, licensed professional engineer, . . . who:

    (1)     is competent to testify;

    (2)     holds the same professional license or registration as the defendant; and

    (3)     practices in the area of practice of the defendant and offers testimony based on the person's:
    (A) knowledge;
    (B) skill;
    (C) experience;
    (D) education;
    (E) training; and
    (F) practice.

(b)     The affidavit shall set forth specifically for each theory of recovery for which damages are sought, the negligence, if any, or other action, error, or omission of the licensed or registered professional in providing the professional service, including any error or omission in providing advice, judgment, opinion, or a similar professional skill claimed to exist and the factual basis for each such claim. The third-party licensed architect, licensed professional engineer, registered landscape architect, or registered professional land surveyor shall be licensed or registered in this state and actively engaged in the practice of architecture, engineering, or surveying.

(c)     The contemporaneous filing requirement of Subsection (a) shall not apply to any case in which the period of limitation will expire within 10 days of the date of filing and, because of such time constraints, a claimant has alleged that an affidavit of a third-party licensed architect, licensed professional engineer, registered landscape

10

architect, or registered professional land surveyor could not be prepared. In such cases, the claimant shall have 30 days after the filing of the complaint to supplement the pleadings with the affidavit. The trial court may, on motion, after hearing and for good cause, extend such time as it shall determine justice requires.

(d)     The defendant shall not be required to file an answer to the complaint and affidavit until 30 days after the filing of such affidavit.

(e)     A claimant's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant. This dismissal may be with prejudice.

(f)     An order granting or denying a motion for dismissal is immediately appealable as an interlocutory order.

(g)     This statute shall not be construed to extend any applicable period of limitation or repose.

(h)     This statute does not apply to any suit or action for the payment of fees arising out of the provision of professional services.

TEX. CIV. & PRAC. CODE ANN. § 150.002(a)–(h).

We conclude that a failure to satisfy § 152.002 does not bear the characteristics of an affirmative defense because a plain reading of § 150.002 does not place a burden on the defendant. *See Zorrilla*, 469 S.W.3d at 156–57 ("Whether classified as an affirmative defense or an avoidance, the hallmark characteristic of both categories of defenses is that the burden of proof is on the defendant to present sufficient evidence to establish the defense and obtain the requisite jury findings."). Additionally, the Supreme Court in *Zorrilla* reasoned that "[b]ecause the statutory cap on exemplary damages automatically applies and its scope is delineated by statute, there is little concern that plaintiffs will be genuinely surprised by its application in any given case." 469 S.W.3d at 157. Extending this logic to an alleged defect under § 150.002, there is also little concern that plaintiffs

11

would be genuinely surprised by a challenge to such threshold statutory requirements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 152.002.

To conclude otherwise would frustrate the purpose of the statute as it would not deter claimants from proceeding with meritless claims whose defects may not be immediately noticeable at the inception of the lawsuit. *See CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.,* 390 S.W.3d 299, 301 (Tex. 2013) (per curium) ("Section 150.002(e) dismissal is a sanction with the same purpose, to deter meritless claims and bring them quickly to an end."); *LaLonde*, 593 S.W.3d at 224 ("[O]ne could envision scenarios in which some discovery would be useful, such as . . . when a certificate is filed but later challenged as inadequate."); *Frazier*, 476 S.W.3d at 75 (finding appellant waived his right to a certificate of merit where in both his answer and in discovery, he admitted that the HVAC design was faulty, thus giving merit to appellee's claims).

However we must balance dismissing meritless claims with not dismissing meritorious claims merely on a procedural technicality, as we have explained in *WCM Group, Inc. v. Brown*, "the purpose of . . . [chapter 150] is to provide a basis for the trial court to conclude that the plaintiff's claims have merit, not to dismiss meritorious claims on a procedural technicality." 305 S.W.3d 222, 230 (Tex. App.—Corpus Christi–Edinburg 2009 pet. dism'd); *see Alex Grp., LLC v. La Joya Indep. Sch. Dist.*, No. 13-19-00445-CV, 2021 WL 727386, at *3 (Tex. App.—Corpus Christi–Edinburg Feb. 25, 2021, no pet.) (same). Therefore, DCI's singular failure to plead a deficiency in Coffman's affidavit did not demonstrate DCI's intent to waive its right to seek dismissal. *See LaLonde*, 593 S.W.3d at 219–220.

12

**2.    Other Defendant's Conduct; Discovery Participation**

Second, Underwriters contends that DCI's decision to proceed to litigate the matter by "engaging in discovery, etc." [3] while other defendants moved to dismiss Underwriters's claims based on a purported violation of § 150.002 early on, is further conduct of intent to waive its right to seek dismissal. However, Underwriters provides no citation to any authorities in its brief or reply brief to support this argument. Accordingly, we do not address this argument because it is inadequately briefed. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also Perez v. Quintanilla*, No. 13-17-00143-CV, 2018 WL 6219627, at *6 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.) (mem. op.) (explaining conclusory statements unsupported by relevant legal citations do not comply with appellate briefing requirements). Even if we considered another defendant's conduct, such as Mayse's decision to move to dismiss earlier than DCI, we do find such a sole conduct to clearly demonstrate waiver by DCI of the right to seek dismissal considering the facts presented in this case. *See LaLonde*, 593 S.W.3d at 219–220.

---

[3] We note that the record shows DCI served: (1) on Underwriters (a) requests for disclosure and requests for production on September 24, 2019, (b), a second request for production on November 7, 2019; (2) on KK Builders, LLC and 1113 Structural Engineers, PLLC two defendants not parties to this appeal, requests for disclosure on September 24, 2019; and (3) on KK Builders, LLC requests for production on November 4, 2019. In other words, the record does not show that requests for admissions or interrogatories were served by DCI, a deposition was taken, or a mediation had occurred. *See LaLonde*, 593 S.W.3d at 217, 227–29 (finding waiver, in a case where the defect had been open and obvious in that no certificate of merit had been filed from the outset, where the engineers brought discovery to a close, even after agreeing to an extension of the discovery and expert-designation deadlines—the engineers had served interrogatories, requested disclosures and production, designated two experts, filed two motions to designate third parties, amended their discovery responses, and filed an amended answer asserting affirmative defenses but not the right to dismissal—sought affirmative relief through a request for attorney's fees, voluntarily participated in a mediation, and participated in a court-ordered mediation).

### 3.   Traditional Motion for Summary Judgment

Third, Underwriters contends DCI's filing of a traditional motion for summary judgment over six months before DCI filed a motion to dismiss based on § 150.002 is further proof of waiver. While DCI does not dispute that it filed a traditional motion for summary judgment, these unsworn statements regarding the procedural history of the case are unsupported by documents in the record. Specifically, neither the traditional motion for summary judgment nor the trial court's ruling on such motion are in the record. *See Palladian Bldg. Co. Inc. v. Nortex Found. Designs, Inc.*, 165 S.W.3d 430, 434–35 (Tex. App.—Fort Worth 2005, no pet.) ("We are not permitted to consider unsworn statements in an appellate brief regarding the procedural history of the case in the trial court, unsupported by documents in the appellate record.").

Therefore, given the facts presented in this case of DCI's failure to plead a deficiency in Coffman's affidavit in its answer, other defendant's conduct in the case, and DCI's filing of a summary judgment which is not included in the clerk's record, we hold that in these facts, DCI did not waive its statutory right to seek dismissal under § 150.002. *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002.

We overrule Underwriters's first issue.

### III.   Compliance with § 150.002(a)(3)

In Underwriters's second issue against DCI and its sole complaint as it relates to Mayse, the parties disagree on the meaning of the phrase "area of practice." *See* Tex. Civ. Prac. & Rem. Code Ann. § 150.002(a)(3). Specifically, Underwriters asserts that Coffman's affidavit and Itle's affidavit are sufficient because the trial court erred by

implicitly reading the word "same"—language from a prior version—back into § 150.002(a)(3). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 152.002(a)(3).

DCI responds that the trial court did not err because: (1) Coffman's affidavit shows that he is a civil engineer practicing in the area of forensic engineering and not structural engineering; and (2) the phrasing in the current version of the statute is no different than the phrasing in the prior version of the statute, "practicing in the same area of practice of the defendant." Mayse responds that the trial court did not err because: (1) Itle's affidavit does not state that he has experience in the design of hotels, like the building at issue, or any similar commercial construction; and (2) even if the trial court read the word "same" back into the statute, such reading does not lead to a different result, as its ruling was in line with *Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 513 S.W.3d 487 (Tex. 2017).

## A.    Standard of Review

We review a trial court's decision to grant or deny a defendant's motion to dismiss under § 150.002 for abuse of discretion. *Frazier*, 476 S.W.3d at 73. However, our standard of review is de novo to the extent we analyze statutory construction. *Id.* "In construing statutes, our primary objective is to give effect to the Legislature's intent." *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018) (citing *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *see also Straub v. Pesca Holding LLC*, 621 S.W.3d 299, 301 (Tex. App.—San Antonio 2021, no pet.). "We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *Rodriguez*, 547 S.W.3d at 838. "Whether

statutory language is ambiguous is a matter of law for the courts to decide." *Morris v. Ponce*, 584 S.W.3d 922, 925 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). "When a statute is not ambiguous on its face, it is inappropriate to use extrinsic aids to construe the unambiguous statutory language."[4] *Rodriguez*, 547 S.W.3d at 838. "We read statutes contextually to give effect to every word, clause, and sentence . . . because every word or phrase is presumed to have been intentionally used with a meaning and a purpose." *Id*. (internal citation omitted). "To determine a term's common, ordinary meaning, we typically look first to dictionary definitions." *Id*. "When interpreting each provision, we must consider the statutory scheme as a whole." *Id*. "Once we determine the statute's proper construction, we must then decide whether the trial court abused its discretion in applying the statute." *Frazier*, 476 S.W.3d at 73.

**B.    Analysis and Applicable Law**

**1.      Meaning of "Area of Practice"**

Section 150.002(a)(3) requires a claimant to file an affidavit by a professional engineer or architect who "practices in the area of practice of the defendant." TEX. CIV. PRAC. & REM. CODE § 150.002(a)(3). Neither Chapter 150 of the Texas Civil Practice and Remedies Code nor the Texas Occupations Code incorporated into Chapter 150, defines the phrase "area of practice." *See id.* § 150.002; TEX. OCC. CODE ANN. §§ 1051.001, 1001.003; *see also Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy*

---

[4] We note that Underwriters urges us to consider cases construing the initial expert report requirement in health-care liability claims, contending they are instructive, as well as part of the bill analysis for Senate Bill 1928, which is the bill that contained the recent amendment to § 150.002(a)(3). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)(3). DCI and Mayse also urge us to consider the bill analysis for Senate Bill 1928. Given that we have determined the statute is unambiguous, we do not consider either. *See Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 135 (Tex. 2018) (after being asked to consider legislative drafting history, the supreme court states: "As we have repeatedly explained[,] . . . we do not rely on such extrinsic aids to construe unambiguous statutory language.").

*Corp.*, No. 19-0334, ___ S.W.3d ___, ___, 2021 WL 1940042, at *6 (Tex. May 14, 2021) ("We apply any definitions the statute supplies, but if a term is not defined, we 'interpret the term according to its ordinary meaning.'") (quoting *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 208 (Tex. 2020)). Neither Black's Law Dictionary nor Webster's Dictionary defines the phrase. *See Rangel*, 595 S.W.3d at 208 ("We typically 'look first to dictionary definitions' to 'determine a term's common, ordinary meaning.'"); *see generally Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 131 (Tex. 2018) (explaining that "[i]n many statutory-construction cases, the parties dispute the meaning of particular words or phrases, and we construe the statute by applying the terms' common, ordinary meaning . . . ."). Underwriters defines "area" as "the scope of a concept, operation, or activity" with citation to the Webster's New Collegiate Dictionary (8th ed. 1977). However, because "area" is written as part of a phrase rather than a stand-alone term, we disagree with defining this term in isolation. *See Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 572 (Tex. 2016); *see also Broadway Nat'l Bank,* 2021 WL 1940042, at *6 ("We do not consider statutory provisions in isolation but rather seek their meaning from the statute as a whole."); *Rodriguez*, 547 S.W.3d at 844 ("We interpret statutes according to the language the Legislature used, absent a context indicating a different meaning . . . .").

Additionally, "[t]o determine a term's ordinary meaning, we may also 'consider the term's usage in other statutes, court decisions, and similar authorities.'" *Rangel*, 595 S.W.3d at 209 (quoting *Tex. State Bd. of Exam'rs of Marriage & Family Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017)); *Whitaker v. R2M Eng'g, LLC*, 603 S.W.3d 530, 535 (Tex. App.—Amarillo 2020, pet. denied). Here, we consider cases analyzing the

17

2009 version of the statute because the phrase "area of practice" did not change from the 2009 version and the phrase no longer contains the modifier "same," as in the pre-2009 version. *See* Act of May 29, 2009, 81st Leg., R.S., ch. 789, 2009 Tex. Gen. Laws 1991 (current version at TEX. CIV. PRAC. & REM. CODE § 150.002).

Relying on 2009 version cases, Underwriters proposes that we construe the phrase in the "area of practice" in the current version on the basis of the defendants' "general area of practice" versus a particular specialty or sub-specialty. While the cases relied upon by Underwriters interpret the statute with the same phrase from § 150.002(a)(3), the Texas Supreme Court has rejected this proposed interpretation. *See Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 513 S.W.3d 487, 494 (Tex. 2017) (*Levinson II*). Prior to the supreme court's decision, we concluded that the trial court did not abuse its discretion by denying the defendant's motion to dismiss on the basis that the plaintiff's certificate of merit failed to state, show, or establish that the expert was knowledgeable in the defendant's area of practice. *Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.,* 500 S.W.3d 431, 436 (Tex. App.—Corpus Christi–Edinburg 2015, pet. granted) *rev'd* 500 S.W.3d 487 (Tex. 2017) (*Levinson I*). In pertinent part, we reasoned that:

> [T]he [2009 version of the] statute merely requires that the expert be knowledgeable in the defendant's general area of practice, which includes architecture, engineering, landscape architecture, or land surveying. The expert need not show that he is specifically knowledgeable in any sub-specialties in those areas of practice. We agree with the Houston court that the statute does not require that the expert explicitly state or show that he or she is knowledgeable regarding the defendant's sub-specialty.

*Id*. at 436.

The supreme court implicitly rejected such interpretation and concluded "[t]hat the statute's knowledge requirement is not synonymous with the expert's licensure or active engagement in the practice; it requires some additional explication or evidence reflecting the expert's familiarity or experience with the practice area at issue in the litigation." *Levinson II*, 513 S.W.3d at 494. Thus, in reaching its conclusion, the supreme court rejected the interpretation of the statute as meaning the defendant's general area of practice and found consideration of the "practice area at issue" necessary. *Id*. at 491–94. For these reasons, we do not interpret the phrase "area of practice" in the current version of § 150.002(a)(3) to mean the defendant's general area of practice and rather construe it as the practice area at issue in the litigation.

### a. Ascertaining the Practice Area at Issue

The supreme court in *Levinson II* did not expressly specify the source for ascertaining the "practice area at issue in the litigation," but it did so implicitly by indicating it conducted a review of the plaintiff's petition to determine the underlying area of practice. *See id*. at 487 (explaining that "[t]he lawsuit concerns a commercial retail project construction on land owned by [the plaintiff]."). However, the court in *Levinson II* did not provide other sources to ascertain the "practice area at issue in the litigation," such as, a contract, a procurement document, a bid, a proposal, or any other document that may shed light on the scope of work at issue. *See id.; but see Melden & Hunt, Inc. v. E. Rio Hondo Water Supply Corp.*, 520 S.W.3d 887, 889 (Tex. 2017); *Gaertner v. Langhoff,* 509 S.W.3d 392, 396 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (explaining that the plaintiff relies on the record—such as, the defendant's contracted obligations on the underlying project—to establish the area of practice rather than the defendant's

characterization of the important issues in litigation to determine the area of practice); *Jacobs Field Servs. N. Am., Inc. v. Willeford*, No. 01-17-00551-CV, 2018 WL 3029060, at *8 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (mem. op.) (concluding that the expert did not qualify under § 150.002(a)(3) after the appellate court reviewed the plaintiff's amended petition, a procurement document, deposition testimony presented by the plaintiff, and an affidavit presented by the defendant from an engineer at ExxonMobil comparing the defendant's duties with the expert's affidavit). Thus, with this guidance in mind, we turn to the appellees' practice areas at issue in the litigation and Coffman's and Itle's affidavits.

### b. DCI's Practice Area

We observe at the outset a common ground regarding DCI's practice area at issue in the litigation among Underwriters and DCI. Namely, Underwriters characterizes DCI's area of practice in two ways: (1) DCI's general area of practice as a professional engineer could be viewed as structural engineering; or (2) DCI's general area of practice could be viewed as structural engineering connected with commercial structures (such as hotels). DCI characterizes its area of practice as structural engineering.

However, following guidance from the cases referenced above, we consider relevant documents to determine DCI's practice area at issue in the litigation, or stated differently, area of practice. *See Levinson II,* 513 S.W.3d at 487; *Melden & Hunt, Inc.*, 520 S.W.3d at 889; *Gaertner,* 509 S.W.3d at 396; *Willeford*, 2018 WL 3029060, at *1. Underwriters's live pleading states as follows: "Upon information and belief, DCI served as the structural engineer responsible for the original structural engineering/approval of [the Hotel]." Additionally, in support of Underwriters's claims for negligence and/or gross

20

negligence, breach of contract, and breach of express and/or implied warranties, Underwriters alleges, in part, that DCI owed a duty not to conduct its structural engineering work for the Hotel with a conscious and knowing indifference to the rights, welfare, and safety of others and breached such duty by, a non-exclusive list:

> Failing to: (i) construct and/or design the Hotel in compliance with applicable building codes and industry standards; (ii) hire, delegate and/or supervise qualified contractors and subcontractors to design and/or construct the Hotel; and (iii) discover the incorrectly designed and/or constructed structures within the Hotel. Additionally, alleging that DCI breached its duties by improperly delegating, hiring, and/or supervising the workmanship and safety of its employees.

We find consideration of any other relevant documents, such as the agreement attached to Underwriters's pleading, unnecessary as Underwriters's live pleading complains specifically of DCI's structural engineering work. We now determine whether Coffman's affidavit shows that he practices structural engineering in compliance with § 150.002(a)(3).

### i. Coffman's Affidavit

Coffman's affidavit states in relevant part:

> [He is] a registered professional engineer, licensed as a civil engineer in the State of Texas . . . . [He] ha[s] more than 8 years of experience as a civil, structural, and forensic professional engineer (PE) or engineer in training (EIT). [He is] actively engaged in the practice of forensic engineering, which includes various components of structural engineering. [He] ha[s] in the past performed structural engineering designs for commercial structures, similar to the subject property, as well as residential structures. [His] design work has primarily been for structures in high-wind areas, similar to Rockport, Texas, or high-seismic areas of the country. Accordingly, [he has] in the past engaged in the same areas of practice as engineers employed by DCI . . . .

Applying our interpretation of § 150.002(a)(3), we conclude Coffman's affidavit complies with § 150.002(a)(3) because it states that he is actively engaged in the

"practice of forensic engineering, which includes various components of structural engineering[,]" and structural engineering is DCI's area of practice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)(3). While DCI argues that Coffman's affidavit does not comply because Coffman is not actively practicing structural engineering, we disagree as on its face Coffman's affidavit says otherwise. Thus, we conclude Coffman's affidavit satisfies § 150.002(a)(3).

We sustain Underwriters's second issue as it relates to DCI.

### c.      Mayse's Practice Area

Underwriters characterizes Mayse's area of practice as architectural work connected with commercial structures, including hotels. On the other hand, Mayse characterizes its area of practice as the design of the Hotel at issue or any other similar commercial construction. Following guidance from the cases referenced above, we will consider relevant documents to determine Mayse's practice area at issue in the litigation. *See Levinson II,* 513 S.W.3d at 487; *Melden & Hunt, Inc.*, 520 S.W.3d at 889; *Willeford*, 2018 WL 3029060, at *1; *see also Gaertner,* 509 S.W.3d at 396.

Underwriters's live pleading states: "Upon information and belief, Mayse was the architect hired prior to the construction to provide architectural services as well as the usual and customary structural, mechanical, and electrical engineering services throughout the duration of the construction project." Additionally, in support of Underwriters's claims for negligence and/or gross negligence, breach of contract, and breach of express and/or implied warranties, Underwriters alleges in part that Mayse owed a duty not to conduct its architectural services for the Hotel with a conscious and knowing indifference to the rights, welfare, and safety of others, had a duty to provide and

22

oversee the structural, mechanical, and electrical engineering services at the Property with the reasonable level of care required by an architect in the State of Texas, and breached such duty by, the following non-exclusive list:

> Carelessly, negligently, or improperly supervising the construction of the Hotel to ensure it was erected in accordance with the design drawings, architectural plans, and all applicable building codes; and

> Failing to: (i) exercise reasonable care in the construction and architectural design of the Hotel; (ii) construct and/or design the Hotel so that it would be reasonably stable and safe in typical and ordinary weather conditions; (iii) hire, delegate and/or supervise qualified contractors and subcontractors to design and/or construct the Hotel, including any necessary structural, mechanical, and electrical subcontractors; and (iv) provide the usual and customary structural, mechanical, and electrical engineering services as required by a similarly situated architect in Texas.

We find consideration of any other relevant documents, such as the agreement between Underwriters's insured and Mayse, unnecessary as Underwriters's live pleading complains of Mayse's architectural services to include its design work at the Hotel which Mayse also frames as its area of practice, in part. Thus, we interpret Mayse's practice area at issue in the litigation to be: (1) the design of a hotel or other similar commercial building; (2) the construction of a hotel or other similar commercial construction, to include construction administration services related to the hiring, delegating, and/or supervising of qualified contractors and subcontractors; and (3) providing the usual and customary structural, mechanical, and electrical engineering services as required by a similarly situated architect in Texas for a hotel or other similar commercial construction. We now determine whether Itle's affidavit shows that he practices in such areas in compliance with § 150.002(a)(3). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)(3).

23

### i.    Itle's Affidavit

Itle's affidavit states in relevant part:

> [He is] a Texas licensed architect . . . . [He] first obtained licensure as an Architect in the State of Illinois in 2005. Since 2000, [he has] worked at Wiss, Janney, Elstner Associates, Inc (WJE), where [his] practice has included investigation of existing buildings to diagnose problems such as water infiltration and to develop repairs, as well peer review and technical support services to other architects and professionals during design for new construction.

Applying our interpretation of § 150.002(a)(3), we conclude that Itle's averments in his affidavit do not specify that he (1) practices in the design of a hotel or other similar commercial buildings; (2) practices in the construction of a hotel or other similar commercial construction, to include construction administration services related to the hiring, delegating and/or supervising of qualified contractors or subcontractors; or (3) provides the usual and customary structural, mechanical, and electrical engineering services as required by a similarly situated architect in Texas for a hotel or other similar commercial construction. Furthermore, Itle's affidavit does not mention anything about commercial structures. Instead, we are left to speculate whether "new construction" includes new commercial construction, new residential construction, or both.

In support of Underwriters' assertion that Itle and Mayse both practice architecture connected with commercial structures, Underwriters provides the following definition:

> Forensic engineering is the application of engineering principles to the investigation of failures or other performance problems. In essence, a forensic engineer . . . applies engineering knowledge and skill to relate the various facts and evidence into a cohesive scenario of how the event may have occurred.[5]

---

[5] Underwriters cites to American Society of Civil Engineers, https://www. asce.org/forensic-engineering/forensic engineering (2020) and Randall K. Noon, Forensic Engineering Investigation, § 1.1 (2000).

Then, without citation to any authorities, Underwriters states: "The same is of course true for forensic architectural work." However, we do not find this contention persuasive because it is unsupported by any authorities. *See* TEX. R. APP. P. 38.1(i). Moreover, Itle does not state that he practices in the area of forensic architecture by evaluating the (1) the design of a hotel or other similar commercial building; (2) the construction of a hotel or other similar commercial construction, including construction administration services related to the hiring, delegating and/or supervising of qualified contractors or subcontractors; or (3) the usual and customary structural, mechanical, and electrical engineering services as required by a similarly situated architect in Texas for a hotel or other similar commercial construction.

Lastly, in support of its assertion that Itle and Mayse both practice architecture connected with commercial structures, Underwriters directs us to two unpublished opinions, namely, *Howe-Baker Engineers Ltd. & CB&I v. Enterprise Products Operating*, LLC, No. 01-09-01087-CV, 2011 WL 1660715 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (mem. op.) and *Nortex Foundation Designs, Inc. v. Ream,* No. 02-12-00212-CV, 2013 WL 3488185 (Tex. App.—Fort Worth, 2013, no pet.) (mem. op), which interpret the pre-2009 version of the statute. In both cases, the courts find that the experts' affidavit complies with § 150.002(a)(3). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)(3). However, these cases are distinguishable from the facts at issue here. In *Howe-Baker* the court considered the experience discussed in the expert's resume, which was referenced in the expert's affidavit. *See Howe-Baker*, WL 1660715, at *4–5. Here, the only evidence before us is Itle's affidavit, and the affidavit does not reference a resume. Additionally, the court in *Howe-Baker* focused its reasoning on the defendant's errors specified in the

25

expert's affidavit to determine whether the expert satisfied § 150.002(a)(3). *Id*. at *5. Here, we do not focus on the errors Itle identified in his affidavit because we conclude additional evidence is necessary to satisfy § 150.002(a)(3) so as not to render it superfluous. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 150.002(b), (a)(3); *cf*. *Levinson II*, 513 S.W.3d at 494 (concluding that acceptance of either the respondent's interpretation, which conflates § 150.002(a)(3) with § 150.002(b), or the court of appeals' interpretation, which conflates § 150.002(a)(3) with § 150.002(a)(2), renders § 150.002(a)(3) requirement superfluous). Additionally, we also find *Nortex* distinguishable because the language in the expert's affidavit regarding the expert's practice area was clear, so the trial court did not have to speculate on its meaning. *See Nortex*, 2013 WL 3488185, at *3 (explaining "the [engineer on the job] and Nortex were employed to provide structural engineering services . . . . In [the expert's affidavit], he states that he specializes in and is actively engaged in the practice of . . . structural engineering."). Thus, we conclude Itle's affidavit does not satisfy § 150.002(a)(3).

We overrule Underwriters's sole issue as it relates to Mayse.

## IV.    COMPLIANCE WITH § 150.002(a)(2)

In its third issue against DCI, Underwriters asserts that Coffman's affidavit satisfies § 150.002(a)(2) because Coffman is a licensed professional engineer in Texas. DCI responds that: (1) the Texas Board of Professional Engineer's website shows that the branch designation for Coffman is civil while DCI's engineer's branch designation is structural, and (2) Coffman cannot stamp the wind load designs in the City of Rockport.

## A. Standard of Review and Applicable Law

Section 150.002(a)(2) requires an expert to "hold[] the same professional license or registration as the defendant." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)(2). We review a trial court's decision to grant or deny a defendant's motion to dismiss under § 150.002 for abuse of discretion. *Frazier*, 476 S.W.3d at 73. However, our standard of review is de novo to the extent we analyze statutory construction. *Id.* Sections 1001.308(a)–(c) of the Texas Occupations Code govern the issuance of licensure by the Texas Board of Professional Engineers and Land Surveyors, which states:

> (a) On payment of the license fee, the board shall issue a license authorizing the practice of engineering[6] to an applicant who, in the board's opinion, has met all the requirements of this subchapter.
>
> (b) A license shall:
>
> (1) show the full name of the license holder;
> (2) have a serial number; and
> (3) be signed by the presiding officer and the secretary of the board under the board's seal.
>
> (c) A license is evidence that the person named on the license is entitled to all rights and privileges of an engineer.

TEX. OCC. CODE ANN. § 1001.308 (a)–(c).

## B. Analysis

Here, we find Coffman's affidavit satisfies § 150.002(a)(2) because the affidavit says he is "[a] registered professional engineer, licensed as a civil engineer in the State of Texas[,]" and the issuance of a license under the Texas Occupations Code does not state that such issuance is for a particular specialty. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 150.002(a)(2); TEX. OCC. CODE ANN. § 1001.308(a)–(c). Rather, all engineers,

---

[6] Practice of engineering is broadly defined in the Texas Occupations Code. *See* TEX. OCC. CODE ANN. § 1001.003(c).

27

regardless of specialty, practice under the same license. *See* Tᴇx. Oᴄᴄ. Cᴏᴅᴇ Aɴɴ. § 1001.308(a); Tᴇx. Oᴄᴄ. Cᴏᴅᴇ Aɴɴ. § 1001.003(c).

Additionally, despite DCI's response that the different branch designations for Coffman and DCI's engineer, as reflected on the Texas Board of Professional Engineers' website, shows Coffman does not satisfy § 150.002, the Texas Administrative Code states that a license is issued regardless of branch designations. *See* Tᴇx. Aᴅᴍɪɴ. Cᴏᴅᴇ Aɴɴ. § 133.97(h) ("A license issued by the board is as a professional engineer, regardless of branch designations or specialty practices."). Finally, while DCI directs us to paragraph six of the City of Rockport Building Inspection Department Plan Submittal Procedures, which in pertinent part requires all plans submitted for approval shall have a structural engineer seal for wind load requirements, or shall include a letter from the engineer, to support its argument that Coffman does not qualify, the record reveals that the City acknowledges that the State Board regulates the practice of engineering. Accordingly, we conclude that Coffman's affidavit complies with § 150.002(a)(2). *See* Tᴇx. Cɪv. Pʀᴀᴄ. & Rᴇᴍ. Cᴏᴅᴇ Aɴɴ. § 150.002(a)(2).

Therefore, we sustain Underwriters's third issue as it relates to DCI.

## V.     Cᴏɴᴄʟᴜsɪᴏɴ

We affirm the trial court's judgment granting Mayse's motion to dismiss in appellate cause number 13-20-00261-CV, and we reverse and remand the trial court's granting of DCI's motion to dismiss in appellate cause number 13-20-00377-CV.

Justice Tijerina dissents, in part, to appellate cause number 13-20-00377-CV.

NORA L. LONGORIA
Justice

28

Dissenting Opinion by
Justice Jaime Tijerina in
Cause Number 13-20-00377-CV.

Delivered and filed on the
23rd day of September, 2021.